24631. EDWARDS, administratrix, *v.* SOUTHERN
RAILWAY CO.

558

DECIDED FEBRUARY 7, 1936.

*Alexander McLennan, Howell & Post,* for plaintiff.
*Neely, Marshall & Greene,* for defendant.

MacINTYRE, J. Mrs. Joseph D. Edwards as administratrix of the estate of her husband, Joseph D. Edwards, brought an action for damages under the Federal employers' liability act against the Southern Railway Company, for the benefit of herself as the surviving widow of her husband. The judge sustained certain special demurrers and two general demurrers to the petition, and dismissed the case. The exception is to that judgment. The petition alleges that it "is brought under the provisions of title 45, § 51 et seq., of the United States Code Annotated," and sufficiently avers that both Joseph D. Edwards and the defendant were engaged in interstate commerce at the time the former was killed. It also sufficiently alleges jurisdiction, the dependency of Mrs. Edwards, the earning capacity and expectancy of the deceased, and his contribution to the support of the plaintiff. By paragraph, the parts of the petition material to a consideration of the questions presented are as follows:

(13) Joseph D. Edwards had been employed by the defendant constantly for a period of nineteen years prior to the homicide herein complained of. (14) Said deceased was a switchman for

the defendant. (27) Deceased was an 'expert and able switch-man, well versed in his employment. (30) "The value of the dollar has recently been depreciated, and the damages herein recovered should be increased by an increased amount, as should be and would have been the amount of contribution from deceased to said dependent." (31) At the time of the homicide the deceased was thirty-nine years of age. (32) At said time deceased was strong and able-bodied. (34) "On or about 2:35 o'clock on the afternoon of April 12, 1934, a train crew of defendant was switching said car . . on the belt-line track of the defendant, . . crossing Ponce de Leon Avenue near the Ford plant. . . Said car was being pulled in a northerly direction by a switch-engine of defendant, and had been pulled to a switch, at which place the engine had been disconnected from said car and it had been shunted into a side-track to the east." (35) "Thereafter said engine was returning to the south at the time of said homicide." (36) "Said engine was returning for the purpose of going north on said track and pushing said car further to the north and spotting same at the landing on the side-track of the consignee." (37) "The crew engaged in said operations were the following, all of whom were then acting in the course of their employment and scope of their authority as agents and servants of defendant" (naming the engineer, conductor, fireman, and two switchmen, one of whom was the deceased.)

(38) "As said engine approached said switch going south, deceased was standing approximately at said switch and on the west side of said track, and with his right leg across said track, straddling the west rail of said track and facing said engine which was headed toward him."

(39) "Deceased was attempting to mount and board the front right of said engine upon the place and platform provided therefor, when said engine ran upon and against him, striking him and running over him in such manner as to cause his death, and which running over of deceased did cause his death." (40) "Approximately five minutes before being run over and killed, deceased was sick and was forced to lie down and rest, and was weakened, and this was known to all of said crew." (41) "At said time there was in force a valid rule and regulation of defendant, and binding upon said engine and the operator thereof, that in ap-

proaching a switch the engine must be stopped short of said switch." (42) "Said engine did not stop short of said switch as it approached same, but on the contrary proceeded approximately thirty-five feet beyond said switch, without stopping, all the while dragging and mangling the body of deceased."

(43) "Said engine was proceeding at a rate of speed of two miles per hour, and could have been stopped within a distance of one and a half or two feet."

(44) "The emergency brake of said engine was never put on or applied, and same could have stopped said engine, as could the regular brake, within one and a half or two feet if same had been applied." (45) "The shoulders and head of deceased as he stood upon said track were visible and could have been seen in the exercise of ordinary care by said engineer, who was upon the same side of said engine as was deceased, and who had control of the brakes and operation of said engine, had said engineer looked ahead of him or looked in the direction of deceased; and said conditions and ability to see continued at all times from when deceased stepped upon said track until he was run over, and said engineer had ample time to stop and prevent any harm to deceased." (46) Said engineer was not looking in front of said engine and was not keeping any lookout ahead of same." (47) "As said deceased was first struck by said engine the conductor shouted to the engineer to stop, which was in time to prevent said homicide." (48) "As the engine struck deceased, deceased shouted, which was in time to prevent said homicide." (49) "Said shouts were heard by the conductor."

(50) "Said shouts were heard by the fireman."

(51) "Said shouts of said conductor were heard by engineer."

(52) "Said shouts of deceased were heard by said engineer."

(53) "Said shouts of the conductor were heard by the fireman."

(55) "Despite same said engineer proceeded further, and neither the conductor nor the fireman did anything to stop said engine, but ran over the body of deceased, mangling and killing him."

(56) "Despite the fact that said train crew knew that deceased was sick, those in charge thereof failed and refused to replace deceased or to relieve him of the necessity of continuing to perform his said duties, but allowed and caused him to continue to work

and to try to board said engine when they knew he was physically unable to do so." (57) "The dirt and gravel adjacent to said track and upon which deceased was standing at the time of his homicide was loose and badly packed and slippery."

(58) "The cross-ties on said track at said switch were broken, rotten, and uneven, and set back approximately eight inches from the adjoining cross-ties, making a jagged and uneven line of cross-ties." (59) "Said looseness and slipperiness and said uneven cross-ties caused deceased to slip, and prevented his successfully boarding said engine, and threw him under said train, so that he was run over." (60) "The ballasting between said cross-ties were lacking, and there was none so as to give deceased an even or firm footing, and the lack of same caused him to be thrown under said engine and run over and killed." (61) "There was no warning given deceased in any manner of the danger of said gravel, said ballast, or said cross-ties." (62) "Same was the regular place for employees of defendant to catch engines, and such was known to defendant, and a duty or care rested upon defendant to provide a safe place therefor." (63) "The foot-board on the platform for boarding said engine where deceased was endeavoring to board same was split, broken, jagged, rotten, slippery, uneven and unsafe, and such insecure footing caused deceased to slip from and under said foot-board in his effort to board same." (64) "Said engine was moving so slowly that it was more difficult to board same in the manner deceased was trying to board it." (65) "Under the circumstances herein alleged said engine struck and knocked deceased down and dragged him approximately thirty-five feet, and mangled his body and ran over and cut off his left leg, and crushed said left leg and left the mangled pieces up and down said track, and tore a great hole in back of his head, and crushed and pulverized his shoulders and drenched him and his clothes in his own blood, and tore great chunks of flesh out of his body and left some clinging to his clothes and killed him." (66) "As a direct result of said killing and said homicide petitioner and said dependent have since said homicide, and will thoroughout the remainder of her life, lose the total and all parts of the contributions herein above described."

(67) "Said homicide was and is the direct, sole, and proximate

result of the negligence of the defendant corporation, which negligence consisted in the following specifications:

"(a) In failing to stop said engine as required by the rules of defendant, so as to permit deceased to board same while stopped. (b) In failing to keep a proper care, watch, and lookout ahead of said moving engine. (c) In failing to observe and stop for deceased when his head and shoulders could in the exercise of ordinary care have been seen by said engineer and when the possibility of peril of deceased was apparent to defendant. (d) In permitting deceased and causing him to continue to work and try to board said engine after said agents of defendant well knew that he had been sick and was physically unable to continue his said duties or to board said engine. (e) In maintaining soft, uneven, and slippery dirt and gravel alongside of the track, so as to cause deceased to slip at a place where defendant knew that he would ordinarily attempt to board said engine. (f) In maintaining soft, jagged, rotten, and uneven cross-ties out of line at a place where defendant knew deceased would try to board said engine. (g) In maintaining said track and road-bed without any ballast between the cross-ties thereof, so as to provide an uneven footing and to cause deceased to fall. (h) With his body clearly visible after deceased had been struck, in failing to notice that he was under said engine, but in continuing to propel same forward at a slow rate of speed and in failing to stop same by applying the hand-brake or the emergency brake when same could have avoided said homicide, and not doing this despite the fact that deceased and said conductor shouted and called on the engineer and fireman to stop said engine in time to prevent said homicide. (i) After deceased and said conductor had shouted for said engine to stop in continuing to propel it forward and mangle and kill deceased. (j) In failing to give deceased any warning of the defective ballast, gravel, cross-ties or foot-board herein above described. (k) In having and maintaining a split, rotten, slippery and unsafe foot-board on the platform for boarding said engine."

(68) "After deceased had been run over as herein described, said engine was backed over his body and ran over him again, further mangling him after his position and the fact that he had been run over once was apparent to said agents of defendant,

which was negligent and further contributed to his said homicide."
(69) "After said striking of deceased, said engine subsequently
proceeded to spot said car." (70) "Said spotting was done
within five minutes of the homicide of the deceased and imme-
diately after the track had been cleared of the moveable parts of
his crushed and broken body." (71) "As a direct, sole, and proxi-
mate result of said injuries deceased, petitioner and dependent
suffered untold mental and physical pain and anguish, and de-
ceased died within fifteen minutes; and petitioner and dependent
have suffered a severe, lasting, and permanent nervous shock."

The following amendment to paragraph 61 was allowed, subject
to objection and demurrer, before the court passed on the de-
murrers: "Deceased did not at said time or previous thereto know
or have any knowledge of the condition of said ballast, gravel,
cross-ties, or of said step of said engine, and he did not know of
the danger of any of said conditions. As petitioner attempted to
mount and board said engine, he slipped and fell as a result of
slipping both upon and because of the uneven footing of the road
and road-bed and the step of said engine."

In view of the fact that we hold that the court erred in dismiss-
ing the petition on general demurrer, we shall pass seriatim on
those special demurrers sustained by the court. Did the court
err in sustaining paragraph 4 of the demurrer and in striking
paragraph 30 of the petition, the demurrer being that the allega-
tions of said paragraph are "irrelevant and immaterial; that the
only right of recovery existing in the plaintiff would be for the
amount which decedent would, in the course of events throughout
his expectancy, have contributed to said dependent; and that as
to the future the depreciation of the dollar would be entirely
irrelevant and immaterial, and argumentative"? This ground of
demurrer was properly sustained.

Did the court err in sustaining paragraph 6 of the demurrer,
and in striking paragraph 41 of the petition, the demurrer being
that "same is too vague, general, indefinite, and uncertain, and
constitutes a conclusion of the pleader; that the rule and require-
ment therein referred to is not set forth, nor is a copy of the
alleged rule attached"? If this averment amounts to a mere con-
clusion as to what the rule was, the demurrer is good; but if the
paragraph sets out the rule itself, or its substance, the demurrer

was not good. See *Social Benevolent Society* v. *Holmes*, 127 *Ga.* 586 (3), 590 (56 S. E. 775). So far as appears from the petition, the paragraph states the very essence of the rule; and we hold that the court erred in sustaining the demurrer and in striking this paragraph.

The following ruling of the court was correct: "Paragraph 9 of the demurrer is sustained and paragraph 56 of the petition is stricken. The allegations are insufficient to show any constraint upon the deceased or any reason why he could not have refrained from working if he had chosen to do so."

Paragraph 10 of the demurrer is as follows: "Defendant specially demurs to and moves to strike the following paragraphs of the said declaration: paragraph 57, 58, 59, 60, and 61, upon the ground that the allegations therein contained are irrelevant and immaterial, it being shown by the allegations of the declaration that the condition of the tracks, cross-ties, etc., was known to the decedent, or could have been known to him in the exercise of ordinary care, and were therefore conditions of which he assumed the risk." The court sustained the demurrer and struck the paragraphs mentioned. Said paragraphs have reference to the alleged dangerous condition of the place where the employee attempted to mount the engine. "Except in cases where the injury results from the violation of some Federal law enacted for the protection of railroad employees, the common-law doctrine of the assumption of risks is still in force in cases arising in interstate commerce. Seaboard Air-Line Railway v. Horton, 233 U. S. 492 (6, 7) (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475)." *A. C. L. R. Co.* v. *Kennedy*, 20 *Ga. App.* 238 (92 S. E. 973). The Horton decision, supra, so clearly distinguishes between contributory negligence and "assumption of risk," and so admirably lays down the law applicable to this branch of our discussion, that we quote from it at length as follows: "Contributory negligence involves the notion of some fault or breach of duty on the part of the employé, and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employés in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free

from any suggestion of fault or negligence on the part of the employé. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employé is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless the defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. . . When the employé does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remèdied, the employé assumes the risk, even though it arise out of the master's breach of duty."

"One who understands and appreciates the permanent conditions of machinery, premises and the like, and the danger which arises therefrom, or by the reasonable use of his senses, having in view his age, intelligence, and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, can not recover against his employer for the resulting injuries. Upon that state of facts the law declares that he assumes the risk. . . Where the elements and combination out of which the danger arises are visible it can not always be said that the danger itself is so apparent that the employé must be held, as a matter of law, to understand, appreciate, and assume the risk of it. Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51 (25 Sup. Ct. 164, 49 L. ed. 382) ; Fitzgerald v. Connecticut River Paper Co., 155 Mass 155 (29 N. E. 464, 31 Am. St. R. 537). The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be

stated, the question of assumption of the risk is plainly for the jury." Butler v. Frazee, 211 U. S. 459, 465 (29 Sup. Ct. 136, 53 L. ed. 281).

While the case of Hamm v. Texas & N. O. R. Co. (Tex. Civ. App.), 221 S. W. 345, involved the question whether or not the evidence was sufficient to show that the employee assumed the risk, and not the question of the sufficiency of the petition to withstand a demurrer, its facts were somewhat similar to those alleged in the petition at bar, and its citations of authority are illuminating. The appellant "alleged, as grounds of negligence on the part of the appellee, the uneven surface of the road-bed near the switch stand where he was required to work in uncoupling cars; that the ties were not filled in between them near the ends, and that they were uneven, rough on top, and rotten and defective, and that there were gaps and niches and notches near the ends of said ties and on tops of same from the rails to the ends." He further alleged that "it was negligence on the part of the appellee to leave its road in that condition near a switch-stand where appellant and other employes had to work, and that he was standing on top of one of said ties while making the uncoupling, and that on account of the uneven and rotten surface of the ties he lost his footing and was caused to slip off, and that his foot went between two ties, and, because it was an unfilled place to a depth of about seven inches, such fall caused his foot to get caught under the car wheel and crushed." The facts of that case made it easier of decision than the case at bar, but the discussion of the law involved makes it well worth citing. It was there held that the employee assumed the risks. The interesting case of Mappin v. Atchison, Topeka &c. Ry. Co., 198 Cal. 733, 742 (247 Pac. 911), presented a situation where the deceased, a switch-foreman, "stumbled over a tie supporting a switch which, according to the plaintiff's claim, had been negligently maintained." Upon the evidence adduced the appellate court declined to hold as a matter of law that the deceased assumed the risk. The part of that decision which particularly interests us is where the court said: "The appellant . . recites at length the evidence in the case upon which it relies in support of its said contention, from which recital it appears that the particular defect in the switch and immediate switching place upon which the decedent stumbled when

about to board one of the moving cars after throwing the switch was that the ties upon which the switch-stand was bolted were sticking above the ground about three inches and that there were rocks and oil about this spot on the ground; that the decedent had been employed in the defendant's freight-yard as a member of its switching crew for a period of about two years prior to the accident which caused his death; that his duties were night duties of the kind he was performing at the time of his injuries; that in the course of these duties it was occasionally his function to throw this particular switch and that he was thereby given a full opportunity to know the condition of this switch and switching place and to be fully informed as to its defective and dangerous state; and that these facts having been shown by undisputed evidence the deceased must be held as a matter of law to have assumed the risk of his employment arising from the known defects and dangers of this particular appliance and place." The court said: "*This might be taken to be true if the foregoing were all' of the facts which were by the court or jury to be taken into consideration upon the subject of assumption of risk.*" (Italics ours.)

We are of the opinion that the alleged defects at and about the place where the employee attempted to mount the engine involved a risk due to the defendant's negligence, and not one which was "normally and necessarily incident to the occupation" and assumed by the deceased. The ultimate question, then, is whether 'the defects and risk alike were so obvious that an ordinarily prudent person under the circumstances would have observed the former and appreciated the latter. The answer to this question depends upon the pertinent allegations of the petition, and these are substantially as follows: (34) The homicide occurred at "about 2:35 o'clock on the afternoon of April 12, 1934," (62) at "the regular place for employees of defendant to catch engines." (38) The deceased was standing "with his right leg across said track, straddling the west rail . . and facing said engine which was headed toward him," and (43) "said engine was proceeding at a rate of speed of two miles per hour." (31) The deceased was thirty-nine years of age, (32) "strong and able-bodied," and (27) "an expert and able switchman well versed in his employment." (13) The deceased "had been employed by defendant constantly for a period of nineteen years prior to the homicide." It does not

appear from the petition that in attempting to mount the engine the deceased was acting under the command of any superior, or that there was any emergency, or that there was any circumstance calculated to blind him to the condition of the road-bed, etc., or the danger incident thereto. Our conclusion is that it must be held as a matter of law that both the defects and the risk arising therefrom were so obvious that the deceased, a skilled and experienced switchman, knew of the former and appreciated the latter. It follows that the employee assumed the risk, and that the court properly sustained paragraph 10 of the demurrer and struck paragraphs 57, 58, 59, 60, and 61 of the petition. The conclusion alleged in the amendment, to the effect that the deceased did not know of the condition of the road-bed, etc., or of the danger incident thereto, must yield to the pleaded facts.

The assignment of error on the ruling sustaining paragraph 13 of the demurrer and striking paragraph 64 of the petition as "a conclusion of the pleader" is abandoned.

The court sustained paragraph 14 of the demurrer, as follows: "Defendant specially demurs to and moves to strike paragraph 65 of the said declaration, and further moves that the court purge the said declaration of the said allegations, because the same are irrelevant and immaterial and calculated to prejudice the jury, if the case was submitted to it, adversely to the said defendant." The demurrer goes, first, to the paragraph as a whole, and, second, to certain alleged inflammatory parts of it. As a whole the paragraph is obviously not subject to the demurrer, and the demurrer does not point out and segregate those parts that are prejudicial. In these circumstances we are constrained to hold that the court's ruling was error.

The court sustained paragraph 15 of the demurrer and struck every specification of negligence contained in the subsections of paragraph 67 of the petition. We hold that the court erred in striking subsection (a) on a demurrer that "the rules of the defendant . . are not alleged or attached as copies, that no copies are attached to the petition, and the allegation, in the absence of said rule being set out in full, is irrelevant and immaterial." See our prior ruling on the demurrer to paragraph 41 of the petition.

The court erred in sustaining the special demurrer to subparagraph (b), on the ground "that the allegation of negligence therein

is too vague, general, indefinite and uncertain, and the same is irrelevant and immaterial under the allegations of the petition." The demurrer itself is too vague, general, and uncertain.

The court did not err in sustaining the demurrer to subparagraph (c), the gist of the demurrer being that there was "no reason, under the allegations of the petition, to stop for the deceased when he was undertaking to mount the engine while in motion."

The court properly sustained the following demurrer: "Defendant specially demurs to and moves to strike paragraph (d) of the specifications of negligence, upon the ground that the same is irrelevant and immaterial, it not being alleged [anywhere] in the petition that the decedent made any application to any person to be relieved of his duties, or what persons knew that he was or had been sick, or what persons knew that he at the said time was physically unable to continue his duties or board the said engine."

The court properly sustained the following demurrer: "Defendant demurs to and moves to strike paragraph (e) of the specifications of negligence, upon the ground that the same is irrelevant and immaterial; for that any soft uneven and slippery condition of the dirt and gravel along the side of the track must have been known to the decedent in the exercise of ordinary care and was a risk assumed by him."

The risk incident to the defects set out in subparagraphs (f) and (g) was assumed by the deceased, and those paragraphs were properly stricken. The court properly sustained the demurrers to subparagraphs (h), (i), and (j) of paragraph 67 of the petition.

The defendant demurred to subparagraph (k) of paragraph 67 of the petition, on the ground that the deceased assumed the risk incident to the defective foot-board of the engine. This was error for reasons hereinafter indicated in passing on the general demurrer.

The court did not err in striking paragraph 68 of the petition, and 69 and 70 were properly stricken for the reason that they were irrelevant and immaterial.

Paragraph 71 is as follows: "As a direct, sole, and proximate result of said injuries deceased, petitioner and dependent suffered untold mental and physical pain and anguish, and deceased died within fifteen minutes, and petitioner and dependent have suffered

a severe, lasting, and permanent nervous shock." It will be borne in mind that this suit is predicated on the Federal employers' liability act, and not on the law of Georgia. Under the law of the State the damage that might be recovered in such a case, under the Code of 1933, § 105-1302, is "the full value of the life of the deceased as shown by the evidence;" and under the State law pain and suffering by the deceased are not compensable in an action by his administrators or others entitled to sue. The rule is different, however, under the Federal law, as shown by the decision in St. Louis & Iron Mountain R. Co. v. Craft, 237 U. S. 648 (35 Sup., Ct. 704, 59 L. ed. 1160), which ruling was followed and applied by this court in Central of Ga. Ry. Co. v. Goens, 30 Ga. App. 770 (5) (119 S. E. 669). Any pain or suffering or mental shock suffered by the petitioner or the dependent is not compensable, either under the law of this State or under the Federal employers' liability act. Counsel for the plaintiff concede in their brief that "It is true that the petitioner and the dependent could not recover for mental and physical pain, and these two words should be stricken from this paragraph, as placing them in the paragraph was a typographical error." We think this paragraph, properly construed most strongly against the pleader, seeks a recovery for the mental and physical pain and suffering of the petitioner and dependent only. The demurrer went to this point, and there was no attempt to amend. We can not see that if damages were being sought for the "conscious pain and suffering of the deceased prior to his death," the paragraph would have been worded as it was. The natural construction from its language is that damages were being sought for mental pain and anguish suffered by petitioner and dependent, because of injuries to the deceased. There was no error in striking this paragraph.

The foregoing ruling expresses the opinion of the majority of this court. While the entire court is in accord on the other questions decided, I can not agree with the majority that the judge did not err in sustaining paragraph 19 of the demurrer and striking paragraph 71 of the petition in its entirety. My individual views in regard to this matter are as follows: The difference between my brethren and myself arises primarily out of our diametrically opposite views of the meaning of this paragraph. They think the paragraph "seeks a recovery for the mental and physical

pain and suffering of the petitioner and dependent *only;*" while I am just as certain that it avers that *both* the deceased and the petitioner suffered mental and physical pain and anguish. Paragraph 71 of the petition precisely as written and punctuated is as follows: "As a direct, sole, and proximate result of said injuries deceased, petitioner and dependent suffered untold mental and physical pain and anguish, and deceased died within fifteen minutes, and petitioner and dependent have suffered a severe, lasting, and permanent nervous shock." Paragraph 19 of the demurrer is: "Defendant specially demurs to and moves to strike paragraph 71 of the said declaration, upon the ground that the allegations therein contained are irrelevant and immaterial; that the mental and physical pain and anguish of the petitioner and dependent are not the subject-matter of damages authorized by the employer's liability act of Congress, such act being entirely compensatory in its character; that the allegations therein contained are inflammatory and calculated to prejudice the minds of the court and jury adversely." "Whilst it is true that pleadings are to be construed most strongly against the pleader, and that if two constructions can be put upon the pleadings, that which is more unfavorable to the pleader must obtain, yet there is another rule, that all pleadings must receive a construction in accordance with the natural intendment of the words and language of the pleadings." *Athens Manufacturing Co.* v. *Rucker,* 80 *Ga.* 291, 294 (4 S. E. 885). I do not think the paragraph is susceptible of two constructions, but in any event it "must receive a construction in accordance with the natural intendment of the words and language of the pleadings." Of course, if it were permissible to insert the word "to" between the words "injuries" and "deceased," so as to make the sentence read "injuries to deceased," the majority's construction would be correct. To do this, however, would be to rewrite the paragraph and give it a meaning entirely different from what it plainly says; and I do not think this can be done. If it should be said that a comma would have to be placed after the word "injuries" in order to give the paragraph the meaning I think it conveys, I submit that punctuation is often a matter of taste, and that one person may deem it proper to insert a comma after an introductory clause, while another may deem such clause so closely related to what follows that a comma is unnecessary.

But if it be assumed that the pleader violated the rules of punctuation by failing to place a comma after the word "injuries," I submit that, with the comma inserted, "deceased" would still be left in the sentence and would still be the subject of the word "suffered." If the word "deceased" were stricken, the paragraph would read that "petitioner and dependent [both being one and the same person] suffered .. . mental and physical pain and anguish," etc.; while if "petitioner and dependent" were eliminated, it would read "deceased . . suffered . . mental and physical pain and anguish," etc. In either event, the sentence would express a perfectly clear thought, and would be logically and grammatically correct. In short, whether a comma be inserted after "deceased," or whether the sentence be read precisely as punctuated and written, the paragraph conveys but one meaning, and that is that *both* the deceased and the petitioner suffered, the deceased just as much as the petitioner. It is quite true that the paragraph is not correct from a legal point of view, for the simple reason that there can be no recovery by the petitioner for her own pain and suffering. But this merely means that the allegation that she "suffered . . mental and physical pain and anguish," and "a severe, lasting, and permanent nervous shock," should be stricken.

But since it is also true that the petitioner *could* recover for the "conscious pain and suffering" of the deceased, I think that she should be allowed to claim damages which the law says may be recovered. I am satisfied that the paragraph is not subject to the attack that the "allegations therein contained are inflammatory and calculated to prejudice the minds of the court and jury adversely." I am satisfied that the part of the demurrer which avers that "the mental and physical pain and anguish of the petitioner and dependent are not the subject-matter of damages," etc., strictly limits the attack to the "mental and physical pain and anguish of the petitioner," and signally fails to raise the question decided by the majority, to wit, that the paragraph fails to aver that the "deceased . .. suffered . . mental and physical pain and anguish." "Neither a paragraph in a petition nor an allegation therein which constitutes only a portion of a paragraph should, on special demurrer, be stricken for defects not specified by the demurrer." *Cowart* v. *Savannah Electric Co., 5 Ga. App.*

664 (2) (63 S. E. 804). If this ruling means anything, it means that neither the trial judge nor this court can make its own demurrer. I am of the opinion that the demurrer under consideration is a special demurrer; but viewing it as a general demurrer, it is not good for the reason that the paragraph of the petition claims an item of damages which the law says is recoverable. Surely a general demurrer could not be sustained on the theory that the paragraph fails to aver specifically that the deceased suffered "conscious pain." One of the definitions of "suffer" given in Funk & Wagnall's New Standard Dictionary·is: "To feel pain physical or mental." To say that a person suffered pain conveys to the mind no idea other than that he felt pain—that he was conscious of it—that he experienced "conscious pain and suffering." I think this gives the paragraph "a construction in accordance with the natural intendment of the words and language of the pleadings." If counsel for the defendant desired to raise the point that the paragraph did not allege "conscious pain," he could and should have done so by a special demurrer. It will be observed that the paragraph alleges that the "deceased died within fifteen minutes;" and construing this averment in connection with the allegation that he "suffered . . mental and physical pain and anguish," I think that, as against a general demurrer, the allegation as to the deceased's suffering pain is good. My individual view is that the paragraph clearly avers that the *deceased* suffered physical and mental pain; and that whether the demurrer be deemed special, general, or both, the court erred in striking the paragraph in its entirety.

The court dismissed the case on the following general demurrers: (1) "Because no cause of action is set out against this defendant." (2) "Because the facts set forth in the said declaration do not entitle the plaintiff to recover damages against this defendant." In. passing on these demurrers the court said, in part, that "whatever risk was attached in this act in attempting to board the engine at the time and place named, the same was assumed by the deceased." Under the Federal employers' liability act (45 U. S. C. A. § 51) every common carrier by railroad engaged in interstate commerce is liable for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insuf-

ficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment." Under § 53 "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *provided,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." Under § 54 "Assumption of risk of employment. In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." Under § 11, "all cars must be equipped with secure sill-steps." In Davis *v.* Reynolds, 280 Fed. 363, 366, the court affirmed a judgment in favor of a brakeman who fell from the step in front of a freight-engine and lost his arm. "He recovered a judgment on the allegation that the accident was due to the negligence of the director-general of railroads in not furnishing a 'secure sill-step' on the buffer-beam of the engine, as required by the safety-appliance statute as amended in 1910 (Comp. St. §§ 8617-8619, 8621-8623), and "the sole breach of duty imputed to the defendant was allowing the sill-step on the engine to become slick from use, and therefore unsafe and insecure." The court said: "'Secure steps' means steps which furnish secure footing for employees having to use them. This is made the more evident by the broad language of section 2, act of 1911, 36 Stat. 913 (Barnes' Code, § 8047), as amended by section 2, act of 1915, 38 Stat. 1192 Barnes' Code, § 8056 [Comp. Stat. § 8639b]), which prohibits carriers from using a locomotive unless it and all its parts are 'in proper condition and safe to operate' in the service to which they are put." We have cited the foregoing case mainly to show that the Federal court treated the requirement of the safety-appliance act that "all cars must be equipped with secure sill-steps" as applying to the sill-steps of an engine. However,

we quote headnote 4 of that decision for the reason that it states a well-known rule of law which is pertinent to the case at bar. "Brakeman on an interstate railroad did not have the duty imposed on him to inspect steps of an engine, and could not, under the Federal statute, be charged with assumption of risk of an insecure or unsafe step, notwithstanding rules of the railroad admonishing him to take no risks." Certiorari in that case was denied. 258 U. S. 627.

"It seems to us that § 4 [35 U. S. Code Ann., § 54, supra], in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action. And taking §§ 3 and 4 together, there is no doubt that Congress recognized the distinction between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employee, there is, with respect to cases not in that category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was feasible." Seaboard Air-Line Ry. v. Horton, supra. In their brief counsel for the defendant in error say: "While it is true that there are allegations in the petition to the effect that the front foot-board of the engine was defective, and whereas counsel for defendant in error concede that if the front-board of the engine was defective such defect would be a violation of the safety-appliance law, it is respectfully urged that in order to gain any advantage from such defect and to invoke the safety-appliance act and thereby escape the doctrine of 'assumption of risk,' the plaintiff's petition must show that the defect proximately caused or contributed to cause the injury complained of." We think the admission of counsel that "if the front foot-board of the engine was defective, such defect would be a violation of the safety-appliance law," is correct and comports with the law. The law is, as stated by counsel, that "in order to gain any advantage from such defect and to invoke the safety-appliance act and thereby escape the assumption of risk the petition must show that the defect proximately caused or contributed to cause the injury." Let us then apply the foregoing

principles of law to the allegations of the petition, which on demurrer, must be considered as true. Paragraph 39 avers that "deceased was attempting to mount and board the front right of said engine upon the platform provided therefor;" paragraph 63 alleges that "the foot-board on the platform for boarding said engine where deceased was endeavoring to board same was split, broken, jagged, rotten, slippery, uneven, and unsafe, and such insecure footing caused deceased to slip from and under said foot-board in his effort to board same;" subparagraph (k) of paragraph 67 states that the defendant was negligent "in having and maintaining a split, rotten, slippery, and unsafe foot-board on the platform for boarding said engine;" and the amendment to the petition avers that "as petitioner attempted to mount and board said engine he slipped and fell as a result of slipping both upon and because of the uneven footing of the road and road-bed and the step of said engine." Bearing in mind that on demurrer, a petition must be construed most strongly against the pleader, we yet feel constrained to hold that this petition, fairly construed, sufficiently avers that the defective condition of the foot-board contributed directly and proximately to the homicide. It follows that the deceased did not assume the risks incident to the defective foot-board; and we hold that the judge erred in sustaining the general demurrer.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur specially.*