## 14345.. CENTRAL OF GEORGIA RAILWAY COMPANY *v.* GOENS, administrator.

1. " Where suit was brought by an administrator, proof of his representative capacity was unnecessary, where no plea of ne unques administrator was filed." *Merritt* v. *Cotton States Life Ins. Co.,* 55 *Ga.* 103 (3).

2. Under the Federal employer's liability act, an employer owes to the employee the exercise of ordinary care and prudence to furnish him with a safe place in which to work, while " an employee assumes the ordinary risks and hazards of his occupation, and also these defects and risks which are known to him, or which are plainly observable, although due to the master's negligence," contributory negligence merely reduces the damage; and " what particular perils are incident to a given business must be determined by the jury, and not by the court, under all the facts and circumstances of each case." Under the facts of the case at bar, the jury had the right to determine the merit of the defense of assumption of risks. The general grounds of the motion for a new trial are without merit.

3. " The admissions contained in an answer of the defendant, made and filed by him in another case, are admissible in evidence against him when pertinent to a question involved in the case on trial."

4. The mortality tables were admissible for the jury to consider, if they chose to do so, in ascertaining the longevity of the deceased and of one of the beneficiaries, whose ages were shown.

5. Under the rule stated in the case of St. Louis, Iron Mountain & So. Ry. Co. *v.* Craft, 237 U. S. 648 (35 Sup. Ct. 704, 59 L. ed.1160), that " Such pain and suffering as are substantially contemporaneous with death or mere incidents to it, as also the short periods of insensibility which sometimes intervene between fatal injuries and death, afford no basis for a separate estimation of award of damages " under the act of Congress of April 5, 1910, as applied to the facts of the case at bar, the question of " conscious pain and suffering " was for the jury.

6. No reversible error was shown by grounds 6, 7, and 9 of the amendments to the motion for a new trial.

7. The present cash value of the future benefits of which the beneficiaries were deprived by death, making adequate allowance according to the circumstances for the earning power of money, is the proper measure of recovery against an interstate railway carrier under the employer's liability act. Chesapeake & Ohio Ry. Co. *v.* Kelly, 241 U. S. 485 (2) (36 Sup. Ct. 630, 60 L. ed. 1117, L. R. A. 1917F, 367). The judge's charge was not in accordance with this rule, and in this respect was erroneous.

8. A verdict could be returned in a lump sum, without apportioning the recovery among the beneficiaries.

DECIDED OCTOBER 3, 1923.

Action for damages; from city court of Americus — Judge Harper. January 30, 1923.

R. L. Maynard, Yeomans & Wilkinson, for plaintiff in error.

B. M. Turnipseed, J. E. D. Shipp, contra. ·

LUKE, J.  J. W. Goens, as administrator of the estate of John Clifford Goens, sued the Central of Georgia Railway Company under the Federal employer's liability act, for damages for the homicide of his intestate. Defendant filed general and special demurrers, and pleaded obvious danger and assumption of risk. The court overruled each and all of the demurrers to the petition as amended, and the jury rendered a verdict for $7,500. Defendant excepts to the overruling of its demurrers, and of its motion for a new trial.

So far as is material to a determination of this case, the petition as amended is as follows:  (1) J. W. Goens is the duly appointed administrator of the estate of deceased.  (2) Defendant is a corporation under the laws of Georgia with an office and place of business in Sumter county, Ga.  (3) Defendant is a common carrier owning and operating a line of railroad through Sumter county, Ga., having a depot and yard in Americus, Ga., and operating a switch-engine on said yard.  (4) Defendant's side-track in said yard branches off from the east side of the main line several hundred yards north of McGarrah St., and runs almost due south across said street and up a sharp grade to tracks west of the warehouse of Glover Grocery Company and Americus Grocery Company.  (5) On and prior to October 6, 1920, deceased was employed by defendant as a switchman in its yards at Americus, and as such it was his duty to accompany the switch-engine, couple cars, change switches, and assist in placing cars to be loaded and unloaded in and about defendant's yards at Americus.  (6) About eleven o'clock on the night of October 6, 1920, the switch-engine was on the part of the side-track described in paragraph 4 of the petition, north of McGarrah street, in the act of pushing three loaded cars ahead of it, due south, across said street and placing them on the side-track south of said street and west of said warehouse. Deceased was at his usual place of work accompanying said switch-engine and walking beside the moving cars about two and

a half feet from the west side of the side-track, about 100 feet north of McGarrah street, when his foot hit against an arch-brick eight inches square and five inches thick, placed there by the agents of the defendant company, and also stumbled over "a large accumulation of clinkers" placed about two and a half feet west of and along said side-track about 100 feet north of McGarrah street by the employees of defendant. In stumbling, the deceased fell by the side of the moving train, and under the rear trucks of the front freight car, and was also hit by a projection of iron and wood upon which the door slid back and forth, attached to the side of the car at the bottom of the door, and thus knocked under the trucks of the car and run over and killed, his body being horribly mangled and torn into several parts.    (7) Deceased "suffered the most terrible mental and physical pain before he died."   (8) Intestate's death was caused by the negligence of defendant, its agents and employees, in placing said arch-brick and cinders within two and one-half feet of its track, where its switchmen would necessarily have to go in performing their work, thus making the track and road-bed of defendant, the place where deceased was to work, dangerous.   (9) Deceased worked from 9 p. m. to 5 a. m., and at all times while he was at work it was dark, and he could not see the clinkers and arch-brick, did not know they were there, could not by the use of due diligence have discovered them, and did not know of the dangerous condition of the track and road-bed.   (10) At the time he was killed the deceased was 22 years old, in sound health, and had an expectancy of 41 years, and was earning $225 per month.   (11) At the time deceased was killed " defendant was engaged as a common carrier in interstate commerce, and the cars being placed were cars that had been loaded with a shipment of goods at a point outside of the State of Georgia, and shipped to Americus, Ga."   (12) Deceased left no widow or children, but did leave surviving him his father, J. W. Goens, and his mother, Mrs. Estelle Goens.   (13) Said father and mother "are poor people with a large family to support, and they were dependent upon said John Clifford Goens during his lifetime, and said J. C. Goens contributed to the support of his father and mother the sum of $200 per month, and said John Clifford Goens was the one whom his father and mother depended upon to support their old age when they will be unable to care for themselves.   (14) By reason of the

foregoing facts, defendant damaged petitioner in the sum of $40,000, and he sues for said sum for the benefit of his said parents, — $20,000 for pecuniary loss, and $20,000 for pain and suffering endured by deceased.

The grounds of the general demurrer may be grouped as follows: (1) No sufficient jurisdictional allegations. (2) No cause of action set forth. (3) The allegations of the petition show that the injury was due to a risk voluntarily assumed by deceased. The petition set forth a cause of action, and the court did not err in overruling the general demurrer. The Federal employer's liability act supersedes all State law in the matter of the employer's liability in interstate transportation by rail (Seaboard Air-Line Ry. Co. v. Horton, 233 U. S. 492 (3), 34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475), and all matters of substance are controlled by the Federal law. Central Vermont Ry. Co. v. White, 238 U. S. 507 (4) (35 Sup. Ct. 865, 59 L. ed. 1433, Ann. Cas. 1916B, 252). Under this act, " except generally as to violations of the Federal statute for the protection of employees, assumption of risk is an absolute defense, while contributory negligence merely reduces the damages." *Charleston &c. Ry. Co.* v. *Sylvester,* 17 *Ga. App.* 85 (86 S. E. 275), citing Horton case supra. " Contributory negligence is the omission of the employee to use those precautions for his own safety which ordinary prudence requires," while " an employee assumes the ordinary risks and hazards of his occupation, and also those defects and risks which are known to him, or which are plainly observable, although due to the master's negligence." *Sylvester* case, supra, citing Schlemmer *v.* Buffalo Railroad, 220 U. S. 590 (31 Sup. Ct. 561, 55 L. ed. 596). It can not be concluded from the allegations of the petition that the danger incident to the arch-brick and clinkers was " an ordinary risk " of deceased's employment, or that they were known to him or were plainly observable, and the jurisdictional allegations are sufficient. The petition was good as against the general demurrer.

Taking up seriatim the objections raised by the special demurrer, ground 7, that paragraph 5 of the petition is defective in that it failed to set out when deceased was employed by defendant, or how long he had been so employed, is without merit. *Swift Spinning Mills* v. *Crouch,* 23 *Ga. App.* 702 (99 S. E. 223). The

objection in ground 8, that paragraph 8 of the petition failed to allege when the arch-brick was placed near the track, is not meritorious. The other objection in that ground, that the expression "large accumulation of clinkers" is uncertain and vague, is good. The clinkers can, and should be, more fully described. Ground 9, attacking paragraph 7 of the petition as being "illegal, immaterial, and improper as a basis of recovery in this action," is not good as a general demurrer to the paragraph, and is insufficient as a special demurrer, in that it fails to point out wherein the paragraph is subject to the criticism made. Ground 10, contending that the clause in paragraph 8 of the petition, "rendered the track and road-bed of defendant, and the place where deceased was to work, dangerous," is a conclusion of the pleader, is without merit, the facts upon which this conclusion is based being sufficiently set out. Ground 11, that paragraph 9 failed to show that the obstructions were not plainly visible, was met and this omission cured by amendment. Ground 12 attacks paragraph 12 of the petition as failing to show that defendant and deceased were both engaged in interstate commerce at the time of the homicide. These facts must be shown (*Charleston &c. Ry. Co.* v. *Anchors,* 10 *Ga. App.* 322, 73 S. E. 551), and the allegations of the petition sufficiently show them. In ground 13 it is complained that the allegations that "J. W. Goens and Mrs. Estelle Goens are poor people with a large family to support," and that they "were dependent upon deceased during his lifetime," were improper, illegal, and afforded no basis for the recovery of damages. It was further contended that the allegation, "and deceased contributed to the support of his father and mother $200 per month, and that said deceased was the one his father and mother depended upon for their support in their old age, when they will be unable to care for themselves," stated a mere conclusion, and did not set out facts adequate to apprise defendant that such loss was in fact suffered. The clause that deceased "was the one whom his father and mother depended upon for support in their old age, when they will be unable to care for themselves" was objected to as being speculative and affording no basis for recovery. A recovery under the Federal employer's liability act, for the death of a railway employee while engaged in interstate commerce, "must be limited to compensating those relatives for whom the administrator sues

as are shown to have sustained some pecuniary loss;" and a surviving child not dependent upon the decedent, and with no reasonable expectation of any pecuniary benefit from the continuation of the decedent's life, can have no share in such recovery. Gulf, Colorado & Santa Fé Ry. Co. *v.* McGinnis, 228 U. S. 173 (33 Sup. Ct. 426, 57 L. ed. 785). Under this ruling, we think the allegations of "dependency" and "poverty" were appropriate. The allegation that the beneficiaries had "a large family to support" was going rather far afield, and should have been omitted. The clause "when they will be unable to care for themselves" illustrated no issue in the case, and should have been stricken on demurrer. The allegation that deceased contributed $200 per month to the support of the beneficiaries was certainly appropriate. Ground 14 complaining that paragraph 14 of the petition, "in which recovery is sought in the sum of $20,000 for the pain and suffering of the deceased, . . . . is illegal and unauthorized," is not good, in that it fails to point out why such recovery was improper.

The first ground of the amendment to the motion for a new trial complains that the court allowed plaintiff to introduce in evidence a plea filed by defendant in the previous suit of "J. W. Goens and Estelle Goens *v.* Central of Georgia Railway," which alleged that deceased at the time of his injury and death was employed in interstate commerce, and that the rights and liabilities of the parties were fixed and controlled by the Federal employer's liability act, the objection being that the plea involved different issues and different parties. After plaintiff's attorney had stated, "it's the same incident and the same parties," the plea was admitted. The plea was properly allowed in evidence. *Printup* v. *Patton,* 91 *Ga.* 422 (18 S. E. 311) ; *McTyer* v. *Stearns,* 142 *Ga.* 850 (83 S. E. 955). The headnote in the former case, adopted as a headnote in the case at bar, sustains this view.

The second and third grounds of the amendment to the motion for a new trial were abandoned.

The fourth ground contends that the court erred in allowing the mortality tables to be introduced, over the objection that they were illegal and immaterial and had no reference to any issue in the case. These tables were clearly admissible. The ages of the deceased and J. W. Goens were proved, and the jury had the right

to consider these tables, if they chose to do so, in ascertaining the longevity of these parties.    See *Atlanta & West Point R. Co.* v. *Johnson,* 66 *Ga.* 259 (4).

The fifth ground complains of the court's charge upon "conscious pain."   In the absence of a request to charge, the court's charge was abstractly correct.   The contention that the evidence did not warrant the charge is more difficult of solution.   In the case of St. Louis, Iron Mountain & So. Ry. Co. *v.* Craft, 237 U. S. 647 (supra), where a father sought a recovery under the Federal act, the deceased lived half an hour after a car had passed partly over his body, broken his bones, opened his abdomen, and pinned his body to the ground.   The court held that the evidence warranted a recovery for pain and suffering (there being evidence that he was groaning once and a while, and that he would raise his arm and try to pull himself out), but, after stating that the case was close to the border line, laid down the rule in such cases as follows (p. 655) : ".Such pain and suffering as are substantially contemporaneous with death or mere incidents to it, as also the short periods of insensibility which sometimes intervene between fatal injuries and death, afford no basis for a separate estimation or award of damages" under the act of Congress of April 5, 1910. The evidence in the case at bar indicates that deceased stumbled over an arch-brick, and then over a pile of clinkers, fell against the side of a box-car, was struck by a projection from the side of the car, knocked under the rear truck of the car, dragged a distance " as far as from here to the back side of the court-house to where parts of his body was found."   " The body was scattered all along. It was on the car and all up and down the track.   There was blood underneath the cars, on the brakebeam."   Another witness swore: " He was mangled up and lay by the track, and one leg was cut off and his body pretty badly cut up.   The body wasn't far from the clinkers."   Another witness testified:   " He had been killed not over five minutes before I got to where his body was."   The facts of this case make it " close to the border line;" still we think it was a jury question whether deceased lived long enough after he was hurt to suffer conscious pain and suffering, and the court was correct in submitting this question to the jury for them to work out under all the evidence in the case.

No reversible error is shown by grounds 6 and 7 in certain ex-

cerpts from the charge of the court. Ground 8 complains of the following excerpt from the charge of the court: "You are not bound by that table, but of course you can use it as far as you may find it serviceable; and, after all, it is a question for you to settle just what, under all the facts and circumstances of the case as you may find them to be, what amount you could say that these parents could reasonably expect in the way of pecuniary benefit from this deceased had he lived, and you, of course, will have the right, and it would be your duty, to incorporate in your verdict just such amount, and such amount only, as you might find, in case you believe the defendant is liable in this action, that the parents might reasonably have expected to receive in the way of pecuniary benefit from this son had he lived." The exception was "that said charge authorized the present recovery of the total principal sum of what could have been reasonably expected, while only the present value of such sum was recoverable in any event; and because the court did not here or elsewhere charge that the amount recoverable in any event was the present value of what the alleged beneficiaries could have reasonably expected from the deceased had he lived" In Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485 (supra), it was held that the present cash value of the future benefits of which the beneficiaries were deprived by death, making adequate allowance according to the circumstances for the earning power of money, is the proper measure of recovery against an interstate railway carrier under the employer's liability act. We think the charge is objectionable for the reasons assigned. As the case will be for trial again, we will not say anything in regard to the evidence as to the proof of damages or as to the amount of the verdict, but will only state that, in our judgment, it was prejudicial error for the court to fail to charge that a recovery could only be had for "the present cash value of the future benefits;" and this is true notwithstanding there was no written request to charge on this subject. Ground 9, complaining that the court erred in failing to charge the jury that if they should find in favor of the plaintiff, they should specify the amount found in favor of each of the beneficiaries, is answered in Central Vermont Ry. Co. v. White, supra, where it was held that a general verdict for the plaintiff could be returned by the jury in an action brought by an administratrix under the Federal employer's liability act for the

benefit of the widow and minor children of the deceased employee, without apportioning the damages among the beneficiaries.

For the reason pointed out, it was error to overrule the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*