## 72083. SEABOARD COASTLINE RAILROAD COMPANY v. DELAHUNT.

(347 SE2d 627)

DEEN, Presiding Judge.

Larry Delahunt brought an action against Seaboard Coastline Railroad Company under the Federal Employers' Liability Act, 45 USCA § 51 et seq., for injuries sustained while he was employed as a switch engine foreman at Seaboard's Savannah yard. He claimed that the railroad was negligent in failing to provide him with a safe place to work and in failing to warn him of a hazardous condition that existed in the railroad yard.

The evidence showed that Delahunt was in charge of a work crew whose task was to remove sixteen "bad order" (defective) boxcars from track no. 6 in the yard by switching them onto a repair track which leads to a repair shed. Each boxcar had a "bad order" tag affixed to it which described the defects and damages requiring repair. The switching action required throwing certain track switches and giving signals to the engineer so the boxcars could be shoved by a locomotive onto the repair track. The location of the tracks required the crew members to give either hand signals or radio signals to the engineer, depending upon whether he could see them. The engineer cut the bad order boxcars out of track no. 6 and began pushing them onto the repair track, the switch was thrown, and the cars began to enter the track.

Delahunt was in the area of the switch and was walking in a northerly direction approximately twenty-four to twenty-six inches from the side of the moving boxcars, out of sight of the engineer, as they were being pushed in a southerly direction. A piece of torn door molding projecting approximately thirty inches from the side of one of the boxcars struck Delahunt and knocked him to the ground, and he sustained injuries to his back and shoulder. He contends that he did not expect to find a seriously defective boxcar on track no. 6 because a track just outside the yard which was designated as the "Old Jacksonville Lead" was where seriously defective boxcars were placed. He testified that he was not told or warned that the boxcars he was instructed to move from track no. 6 onto the repair track were seriously damaged, as he expected seriously damaged boxcars to be repaired prior to movement within the yard. He also testified that he had to walk close to the boxcars because the tracks in the area were very close together, and that the narrow walkway between the tracks was strewn with debris and rubbish. Delahunt received a judgment of $561,282.94 on a jury verdict. $30,474.14 of this amount was for medical expenses incurred to date. The railroad appeals, enumerating twenty errors.

1. Appellant first contends that the trial court erred in denying

its motion in limine and allowing Delahunt to introduce evidence of the amount of his medical expenses, and in not allowing it to put forth evidence of payments of his medical expenses which were made pursuant to a group insurance contract, GA 23000, provided to its employees as a result of a collective bargaining agreement.

45 USCA § 55 provides that a common carrier may setoff "any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee. . . ." If, however, medical bills incurred in treatment of an injury which was due to the employer's negligence are paid by the hospitalization insurance which is provided to the employee without charge, the insurance benefits are considered to be a fringe benefit and therefore a collateral source. The employee's medical expenses could therefore not be recovered by the employer in a FELA case. *Patterson v. Norfolk & Western R. Co.*, 489 F2d 303 (6th Cir. 1973); *Clark v. Burlington Northern*, 726 F2d 448 (8th Cir. 1984).

Payments made under group insurance contract GA 23000 fall under the collateral source doctrine, and the plaintiff can claim his medical expenses as a part of his damages. *Haughton v. Blackships*, 462 F2d 788 (5th Cir. 1972); *Hall v. Minn. Transfer R. Co.*, 322 FSupp. 92 (1971); and *Southern Pacific Transp. Co. v. Allen*, 525 SW2d 300 (1975), held that the industry-wide group insurance policy, GA 23000, issued by Traveler's Insurance Company, was a fringe benefit and that the trial court correctly applied the collateral source rule. We find no merit in this enumeration.

2. Appellant next urges as error the trial court's charge on res ipsa loquitur, claiming that such a charge is improper when a plaintiff puts forth direct evidence of the defendant's negligence. The parties agree that federal law is controlling in a FELA case.

While such a charge would constitute reversible error under Georgia law, *Harlan v. 6 Flags Over Ga.*, 699 F2d 521 (11th Cir. 1983); *Southern Bell Tel. &c. Co. v. LaRoche*, 173 Ga. App. 298 (325 SE2d 908) (1985), it is permitted in FELA cases. In *Dugas v. Kansas City &c. R. Lines*, 473 F2d 821, 825 (5th Cir. 1973), the court relied upon *Jesionowski v. Boston &c. R. Co.*, 329 U. S. 452 (67 SC 401, 91 LE 416) (1946), in deciding the application of res ipsa loquitur in FELA cases. The court held, "it is the settled law of this Circuit that res ipsa loquitur is proper even though the plaintiff attempts to prove exactly what happened. *Texas & Pacific Railway Company v. Buckles*, 5th Cir., 1956, 232 F.2d 257, cert. denied 351 U. S. 984, 76 S.Ct. 1052, 100 L.Ed.2d 1498; *Kansas City Southern Railway Company v. Justis*, 5 Cir., 1956, 232 F.2d 267, cert. denied 352 U. S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53."

3. Appellant claims that the court below erred "in permitting plaintiff's counsel to make numerous 'speeches' and 'speaking objec-

tions' over his objection." It gives five references to the transcript in support of this enumeration, but argues in its brief only one instance of a speaking objection which it alleges was prejudicial. It claims counsel misstated the evidence in its objection during an examination of the witness Bellamy. We have reviewed the relevant portion of the transcript and find there was no misstatement by plaintiff's counsel. Moreover, the basis for appellant's objection on appeal was not raised in the court below and cannot be considered for the first time on appeal. *Kent v. Henson*, 174 Ga. App. 400 (330 SE2d 126) (1985).

4. Appellant claims that the trial court erred in allowing plaintiff's counsel to cross-examine a witness as to the provisions contained in 49 CFR § 215.9 and in charging the jury on the provisions in 49 CFR §§ 215.9, 215.10, 215.11. As appellant makes no citation of authority or argument as to the allegedly improper cross-examination, it is deemed abandoned. Court of Appeals Rule 15 (c) (2).

As to the allegedly improper charge, the first of these provisions in 49 CFR § 215.9 pertain to the movement of defective cars for repair at any time to any location. The rule does not state a limitation as to time and location or specify that it was intended not to apply to movements for repairs occurring within the railroad yard, as urged by appellant. The remaining sections are equally relevant to the issues at trial, but as appellant has failed to support this portion of his enumeration with either argument or citation to authority it is deemed abandoned.

5. Appellant's witness, a private investigator, was permitted to refresh his memory during direct examination and over objection; plaintiff's counsel was permitted to see the notes he was using to refresh his memory. Counsel has no right to examine a document which a witness uses to refresh his memory. *Jackson v. State*, 242 Ga. 692 (251 SE2d 282) (1978). It is not error to refuse to allow counsel to see the entire memorandum, a work paper of the witness, from which the witness refreshed his recollection. *Smith v. Smith*, 222 Ga. 313 (149 SE2d 683) (1966).

While the trial court erred in permitting the plaintiff's counsel to examine the witness' notes, appellant has failed to show how this error prejudiced its defense. For reversal, error must be shown to be harmful. *Robinson v. State*, 176 Ga. App. 18 (335 SE2d 303) (1985); *Henderson v. Colony West*, 175 Ga. App. 676 (332 SE2d 331) (1985).

6. Appellant claims it was error for the trial court to admit into evidence testimony as to the conditions on or near track no. 6 because these conditions were immaterial to those on the repair track, which is the track on which the incident in question occurred.

The evidence showed that there was, at best, a thirty-six inch clearance between trains within the yard. Many times the clearance was much less. Delahunt argues that there would be no reason for an

employee working in the area to anticipate that a boxcar coming from track no. 6 onto the repair track would have an object projecting thirty inches from its side. This evidence was relevant as to what Delahunt would expect in the way of a boxcar defect coming from track no. 6 and as to the customary industry practice of walking near the trains. " '(T)he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.' " *Almendarez v. Atchison, Topeka &c. R. Co.*, 426 F2d 1095, 1099 (5th Cir. 1970). The evidence presented was relevant as to whether Seaboard was negligent in placing a heavy bad order boxcar on track no. 6, where it would be pushed to the repair track when the testimony of the work crew member indicated that he would not have expected one of these cars to have a thirty-inch projection extending from its side.

7. Evidence of the presence of debris and rubbish in the repair yard where Delahunt was injured was properly admitted into evidence by the trial court. The evidence showed that his attention was distracted from the approaching boxcars because he had to look for the debris underfoot to avoid tripping. This testimony was relevant to the railroad's defense that he was careless because he was not paying attention to the movement of the cars. The evidence showed that the debris lay between a small rail shed and the track, leaving only a narrow path upon which the plaintiff could walk unimpeded. The evidence therefore helped explain the reason he was walking so close to the moving rail cars when he was struck by the projection on the side of one of the cars. A railroad has a duty to keep its yards free of debris, holes, etc. *Central of Ga. R. Co. v. Goens*, 30 Ga. App. 770 (119 SE 669) (1923); *Alford v. Atlantic Coast Line R. Co.*, 79 Ga. App. 616 (54 SE2d 450) (1949).

8. The railroad contends that the trial court erred in failing to rule on its motion to strike testimony that certain railroad employees had instructed Delahunt on previous occasions to do work which violated safety rules. Contrary to appellant's assertion, the transcript shows that the trial court ruled on his motion by limiting the plaintiff's testimony to instructions given by the yardmaster. We find no error. The yardmaster had supervisory power over the plaintiff, and the evidence was needed to explain the reason the plaintiff was not contributorily negligent in failing to inspect the railcars prior to their movement. The evidence was admitted to show a course of conduct. Transactions of a similar nature are admissible in evidence. *Deckner-Willingham Lumber Co. v. Turner*, 171 Ga. 240 (155 SE 1) (1930); *Tapley v. Youmans*, 95 Ga. App. 161 (97 SE2d 365) (1957).

9. The trial court did not err in charging the jury that the railroad has a duty to provide its employees with proper tools and appliances. The evidence showed that the plaintiff was provided with a

defective radio which increased the hazard while working on the side of the train away from the engineer. Delahunt was working on the off-side when he was struck by the projection from the boxcar. Because the radio was defective, he had to give instructions to certain crew members personally and meet with the car inspector who unlocked the car repair facility switch. As a result, he was below the switch instead of above it, where he was to realign the switch after the train pulled into the facility. He was struck as he returned to the shop switch. An operable radio would have permitted him to remain at the engine end of the train, and he would have been approaching the shop switch from the same direction as the train. In all likelihood, the injury would never have occurred if he had been in this position.

10. The jury instruction as to the duty of the railroad to furnish safe railroad cars was not error. The evidence showed that the defective boxcar in question was improperly placed on track no. 6 rather than on the "heavy bad order" storage track outside the yard. Only boxcars with minor repairable defects are to be placed on track no. 6. The railroad had a duty to place only safe railroad cars within the yard, which was a part of its duty to furnish its employees with a reasonably safe place to work. See *Griswold v. Gardner*, 155 F2d 333 (7th Cir. 1946).

11. Appellant's contention that the trial court erred in charging assumption of the risk, because the doctrine had been abolished since 1939 in FELA cases by 45 USCA § 54, must fail because such a charge could only have been favorable to the railroad. Such an error in charge without a showing of prejudice does not constitute reversible error. *Atlantic Coast Line R. Co. v. Smith*, 107 Ga. App. 384 (130 SE2d 355) (1963).

12. The trial court did not err in instructing the jury that the plaintiff could recover future loss of wages. The railroad contends that there could be no loss of future wages because his hourly wage was higher at the time of trial than it was at the time of his injury. The evidence showed that his hourly wage was higher because he, along with all other yard foremen, received a union-negotiated pay raise which was not based on merit. The evidence also showed that he had lost a great deal of work time since his injury in December of 1981 and that he was still continuing to suffer from his injuries. His physician testified that he had no knowledge of how well the plaintiff would work under stress; that, in his opinion, his injuries would be a debilitating or disabling factor in the future; and that he suffered, at a minimum, a whole body disability of 20 percent. In addition, his disability could increase because he would likely develop osteoarthritis in the spine above and below the fused joint. This instruction was amply supported by the evidence.

13. Appellant's eight remaining enumerations of error all pertain

to the failure of the trial court to give certain requested jury charges. We find no error.

A charge on legal accident can be given only where there is no evidence of negligence on the part of either party. *Cohran v. Douglasville Concrete Prods.*, 153 Ga. App. 8 (264 SE2d 507) (1980); *Everett v. Clegg*, 213 Ga. 168 (97 SE2d 689) (1957). As to the requested charge that the railroad is not responsible for defects in its equipment because of the negligence of others, we find that the plaintiff never contended that the protruding piece of metal on the boxcar was caused by the railroad's negligence; he was contending that the defective boxcar was improperly handled by the railroad.

The request that the railroad was not required to anticipate the plaintiff's negligence was not adjusted to the evidence. The court, however, did charge that if the plaintiff's injuries were solely the result of his failure to exercise care for his own safety, he would not be entitled to recover. Therefore, this issue was adequately covered in the general charge.

The railroad's lack of a duty to warn of open and obvious dangers was effectively given in the court's general charge, as was the charge that speculative future damages are not recoverable. The trial court also gave ample instructions on the jury's duty to render an impartial verdict and need not have given the requested charge that a juror cannot place himself in the position of the plaintiff for the purpose of assessing damages.

On recharge the trial court adequately instructed the jury as to the amount recoverable as past lost earnings, and under the charge as given it was not possible for the jury to have considered the plaintiff's gross income. No exception to this charge was taken.

The court was not required to give the requested charge as to safety rule violations by the plaintiff. The evidence showed that Seaboard, by moving a defective car without using the proper procedure, was in violation of the Federal Safety Act of 1970 as set forth in 49 CFR 200.1 § 215.9. This violation invoked 45 USCA § 53, which removed the issues of contributory or comparative negligence from the jury's consideration. See *Crane v. Cedar Rapids &c. R. Co.*, 395 U. S. 164 (89 SC 1706, 23 LE2d 176) (1969).

*Judgment affirmed. Benham and Beasley, JJ., concur.*

DECIDED JUNE 23, 1986 —
REHEARING DENIED JULY 7, 1986 —

*James M. Thomas, James B. Mathews III*, for appellant.

*William E. Moore, John Wright Jones, Paul R. Bennett*, for appellee.