### A96A0051. GOSS et al. v. TOTAL CHIPPING, INC. et al.
#### (469 SE2d 855)

SMITH, Judge.

After a vehicular accident in which a car driven by Mary Gail Goss struck the rear of a wood chip hauling truck, Goss and her husband brought suit against the owner of the truck, Total Chipping, Inc., and the driver, Steven Hesson. Goss alleged she was following the truck when it stopped suddenly after traversing a railroad crossing. She contended she was unable to stop in time to avoid the collision because the truck's brake lights were not functioning. The complaint, as amended, sought damages resulting from the incident, including pain and suffering, past and future medical expenses, lost wages, and punitive damages. Her husband sought damages for loss of consortium. At trial, the jury returned a verdict in favor of Goss in the amount of $3,300 on all her claims and in favor of the defendants on her husband's consortium claim. Judgment was entered on the jury's verdict, and the Gosses appeal following the denial of their motion for new trial.[1]

1. Goss presented evidence of medical expenses and lost wages in excess of $33,000, but the verdict awarded only ten percent of that amount; the Gosses therefore contend the verdict was "completely contrary to the evidence." Although this issue was enumerated as error, the Gosses have failed to present argument or citation of authority on this issue. Pursuant to Court of Appeals Rule 27 (c) (2), it is deemed abandoned.

2. The Gosses contend the trial court erred in excluding evidence from two former employees of Total Chipping. The two witnesses formerly drove trucks for Total Chipping and would have testified that the trucks were poorly maintained and unsafe, that continuing problems existed with the lights and the brakes, and that on several occasions the owner had instructed them to drive the trucks after the drivers had called his attention to these problems.

---

[1] Although none of appellants' enumerations specifically addresses the verdict on the consortium claim, error is contended as to the judgment of the trial court and the verdict in general, which includes the zero verdict on the consortium claim. Under *Boatner v. Kandul*, 180 Ga. App. 234 (1) (348 SE2d 753) (1986), this case is therefore properly brought as a direct appeal.

(a) The Gosses contend that this evidence of poor maintenance practices in the past was relevant to show causation, a previously existing dangerous condition, and a course of conduct by Total Chipping. We do not agree. As a general rule in negligence actions, evidence of similar acts or omissions is not admissible. In actions to recover damages sustained in vehicular collisions, the issue before the court is whether any of the parties was negligent. That must be ascertained in each incident from the circumstances surrounding that incident, not by the reputation or past acts of the parties. *Wright v. Dilbeck*, 122 Ga. App. 214, 217 (176 SE2d 715) (1970). An exception to this rule exists if the evidence tends to prove some pertinent fact in the case on trial, such as showing knowledge of the defect claimed or causation, if it rebuts a particular contention regarding how the accident happened or shows that the same dangerous condition existed previously. *Gunthorpe v. Daniels*, 150 Ga. App. 113 (1), 114 (257 SE2d 199) (1979). Even under this exception, the evidence not only must be relevant but must also be examined to ensure that it will not consume too much time, confuse the issues, or present a potential for undue prejudice or unfair surprise. *Dimarco's, Inc. v. Neidlinger*, 207 Ga. App. 526 (1), 527 (428 SE2d 431) (1993).

"Generally speaking, questions of relevance are within the domain of the trial court, and, absent a manifest abuse of discretion, a court's refusal to admit evidence on grounds of lack of relevance will not be disturbed on appeal. The rule is usually stated that the judge may exercise his discretion in excluding relevant evidence if he finds that its probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice or of confusing the issues or of misleading the jury." (Citations and punctuation omitted.) *Kane v. Cohen*, 182 Ga. App. 485, 486 (2), 487 (356 SE2d 94) (1987).

In this case, the excluded evidence showed no prior accidents caused by faulty maintenance, and no other evidence of prior accidents caused by poor maintenance was presented or offered. The excluded testimony did not pertain to the truck driven by Hesson on the date of the accident in issue. In addition, the parties' differing contentions regarding the manner in which the accident occurred were fairly presented to the jury and supported by other evidence. As a consequence, evidence of Total Chipping's poor maintenance practices in the past was only marginally related to any fact in this case, and the trial court properly concluded that the probative value of the excluded evidence was far outweighed by its prejudicial effect.

The Gosses argue that similar past transaction evidence was held admissible in *Central of Ga. R. Co. v. Butts*, 211 Ga. App. 619 (440 SE2d 218) (1994) and *Seaboard Coastline R. Co. v. Delahunt*, 179 Ga. App. 647, 650 (8) (347 SE2d 627) (1986). Their reliance upon these

cases is misplaced. Both cases may be distinguished on their facts. In *Butts*, we emphasized that such evidence is generally *inadmissible*, but in that case, objection to its admission was waived. Id. at 619-620 (1). In *Delahunt*, the error enumerated was not the admission of the testimony but the failure of the trial court *to rule* on the motion to strike the challenged testimony about past transactions. Id. at 650 (8). Similarly, the line of cases typified by *Browning v. Paccar, Inc.*, 214 Ga. App. 496 (448 SE2d 260) (1994), relied upon by the Gosses, has no application here. Those cases involve dangerous defects in manufacturing or packaging mass-produced items. A defect in one such item in its design or manufacture would necessarily occur in thousands of identical products. In such cases, proving that the defect existed in other products and caused accidents in the past is highly relevant to proving the facts of the case on trial. That is not so here. Even if it proves a pattern or course of conduct, establishing that Total Chipping was negligent in repairing other trucks in the past does not bear on the issue of what caused this particular collision.

(b) The Gosses also maintain that the evidence was admissible for the purpose of impeaching the testimony of Hesson and James Ware, the principal shareholder of Total Chipping. It is true that a witness may be impeached by disproving the facts testified to by him. OCGA § 24-9-82. But a witness may not be impeached with regard to a matter irrelevant to the issues being tried. "A witness' possible lack of credibility concerning matters otherwise irrelevant to any issue in dispute does not thereby become material to the case as an issue of impeachment. [Cits.]" *E. H. Siler Realty &c. Broker v. Sanderlin*, 158 Ga. App. 796, 797 (1), 798 (282 SE2d 381) (1981). We have held that the trial court properly ruled the excluded testimony insufficiently relevant to the issues in this case to be admitted. It was therefore not admissible for impeachment purposes.

3. The Gosses assert the evidence was also admissible on the limited issue of punitive damages, and they argue that the trial court erred in failing to admit this evidence in the liability phase of the trial, as directed by OCGA § 51-12-5.1 (d) (1). We do not agree.

Since punitive damages were sought, OCGA § 51-12-5.1 (d) (1) directs that the jury must "first resolve from the evidence produced at trial whether an award of punitive damages" should be made by deciding this question on a special verdict form. This Court has held, however, that notwithstanding the enactment of OCGA § 51-12-5.1, the trial court still possesses the authority to control the course of the trial. OCGA § 9-11-42 (b) specifically authorizes the trial court to exercise its discretion to avoid prejudice, and "nothing in OCGA § 51-12-5.1 suggests the legislature intended any restriction on OCGA § 9-11-42 (b)." *Hanie v. Barnett*, 213 Ga. App. 158, 160 (1) (444 SE2d 336) (1994). Neither does the holding in *City of Monroe v. Jordan*,

201 Ga. App. 332 (411 SE2d 511) (1991), relied upon by the Gosses, strip the trial court of that authority. *Hanie*, supra. Here, as in *Hanie*, although the challenged evidence may have been relevant to the issue of punitive damages, its admission was potentially prejudicial. The trial court did not abuse its discretion in excluding the evidence.

In this case, although the challenged evidence was excluded, some evidence relevant to the claim for punitive damages was admitted because it was also relevant to the claim for compensatory damages. The jury heard evidence from two police officers and a friend of Goss's husband that Hesson commented after the accident about Total Chipping's faulty maintenance practices and the unsound condition of this particular truck. This evidence was contradicted by Hesson, Ware, and another Total Chipping employee. After being properly charged on punitive damages, the jury concluded that no punitive damages were awardable and specifically so found.

*Hanie* involved a comparable fact situation because evidence of prior transactions pertinent to punitive damages would have been highly prejudicial to the defense on the issue of liability for compensatory damages. The procedure used in *Hanie*, supra, was different, however, because the trial court there essentially "trifurcated" the trial and allowed the jury to decide the issue of liability for compensatory damages before hearing any evidence on or deciding the issue of liability for punitive damages. That is perhaps the better practice in these circumstances. In this case, however, the jury returned a verdict in an amount far less than the amount sought by the Gosses. They awarded Goss compensatory damages in an amount less than ten percent of her special damages and awarded her husband nothing on his claim for loss of consortium. We conclude, therefore, that even if the procedure employed here was error, it is highly unlikely that it contributed to the verdict, and we deem it harmless.

4. The Gosses contend that no evidence was presented showing that Goss could have discovered or avoided the defendants' negligence and that the trial court therefore erred in charging the jury on avoidance of consequences. The Gosses correctly note that when no evidence is presented from which a jury could find the plaintiff could have avoided the accident, it is reversible error to instruct the jury on the avoidance doctrine. See *Carrandi v. Sanders*, 188 Ga. App. 562 (1), 563-564 (373 SE2d 661) (1988). But to justify a charge on any given subject, direct evidence on that point is not necessary. It is sufficient if some evidence exists from which the jury may engage in a legitimate reasoning process to reach an inference on that point. *Beringause v. Fogleman Truck Lines*, 209 Ga. App. 470, 471 (2), 472 (433 SE2d 398) (1993).

In this case, Goss herself testified that it was light outside, that

she followed Hesson's truck for some distance, and that both she and the truck were proceeding very slowly. Evidence was presented that when the brakes "lock" on a large, empty trailer such as the one pulled by Hesson's cab that morning, the brakes emit a great deal of smoke and noise. From this evidence, the jury could have inferred that even if no lights warned Goss of the truck's braking, she could have noticed the stopping truck and avoided the accident. The trial court did not err in charging the jury on the avoidance doctrine.

5. Goss also complains of the trial court's direction of a verdict against her on two issues.

(a) The trial court properly directed a verdict against Goss on her claim for property damage. "As a general rule recovery for damages to an automobile may be based on the difference in the value before the injury and the value afterwards; alternatively, it may be based on the reasonable value of necessary repairs together with hire value of the vehicle while incapable of use and the value of permanent impairment, provided the aggregate amount of those items does not exceed the value of the automobile before the accident, with interest." (Citations, punctuation, and emphasis omitted.) *Bowling v. Gober*, 206 Ga. App. 38, 39-40 (3) (424 SE2d 335) (1992).

The only evidence presented regarding property damage was the estimated cost of repairs. This evidence was insufficient to permit the jury to calculate damages for this claim. Although the trial court granted the motion for directed verdict based upon the argument that this claim was not included in the pretrial order, the motion was also made on the ground that the evidence was insufficient. We therefore affirm that ruling under the principle that a trial court's ruling right for any reason will be affirmed. *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 590 (452 SE2d 159) (1994).

(b) The court also granted defendants' motion for a directed verdict on the issue of future medical expenses.

At trial, the testimony of Goss's treating physician, Dr. Carl Herring, was presented by video deposition. Dr. Herring diagnosed Goss's neck pain as thoracic outlet syndrome. He testified that, generally, thoracic outlet syndrome is a chronic degenerative condition usually not caused by trauma, per se. Dr. Herring was "not sure" whether Goss would suffer permanent impairment from the accident. He opined that it was possible she would continue to suffer from accident-related problems, but he believed "they'd be of a more diminished nature."

Evidence had also been presented at trial that approximately one month before the accident, Goss had visited her family physician complaining of back pain, and that Goss had experienced neck pain off and on since she was ten years old.

Even the tentative nature of Dr. Herring's testimony as to future

medical expenses was undermined by his lack of awareness, when that opinion was given, of any history of previous problems. When informed of them, he testified that if Goss was complaining of back pain before the accident "it'd be hard to implicate her car accident as a direct cause of the low back pain." He also stated that if she had been complaining of neck, shoulder, and arm pain intermittently for some years, he could not state to a reasonable degree of medical certainty that the accident directly caused the thoracic outlet syndrome. He also admitted that a consulting neurologist concluded either that Goss was "embellishing" the description of her pain or that her pain was due to somatization of other complaints, defined as "the neurotic conversion of emotional strain and conflicts into symptoms."

To warrant an award for future medical expenses, evidence must be presented that the injury will require future medical attention. *Massie v. Ross*, 211 Ga. App. 354 (1) (439 SE2d 3) (1993). A claim for medical expenses must fail when no evidence is presented from which the jury can ascertain, except by mere speculation and conjecture, that the plaintiff would actually have those expenses. Given Dr. Herring's testimony, especially Dr. Herring's inability to testify that Goss would actually incur any medical expenses in the future, the trial court properly directed a verdict against Goss on her claim for future medical expenses.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

DECIDED MARCH 13, 1996.

*York, McRae & York, Michael D. McRae, Robert T. Monroe*, for appellants.

*Kinney, Kemp, Pickell, Sponcler & Joiner, Henry C. Tharpe, Jr., Douglas W. Brown*, for appellees.