A97A1944. CSX TRANSPORTATION, INC. v. WILLIAMS.
(497 SE2d 66)

BEASLEY, Judge.

Steve Williams filed suit under the Federal Employers' Liability Act ("FELA") to recover damages due to injury on his job with CSX Transportation, Inc. CSX admitted liability but moved in limine to exclude evidence of Williams' medical expenses. Williams, on the other hand, moved to exclude evidence that the medical expenses had been paid by virtue of GA-23000, a policy insuring CSX employees for on-the-job injuries.

The court allowed the evidence of the medical expenses ($23,594.51) but disallowed reference to the GA-23000 payment. The court also refused CSX's proposed jury charge that in calculating lost income the jury should award only after-tax income. The verdict was $350,000. The issues on appeal are (i) whether CSX's failure to introduce evidence of tax rates waived the jury instruction and (ii) whether medical expense payments under GA-23000 for on-the-job injuries were to be offset against any recovery from CSX.

1. Citing *Norfolk & Western R. Co. v. Liepelt*,[1] CSX enumerates as error the court's failure to charge the jury that any award of past or future lost wages must represent Williams' after-tax and not pre-tax wages. Williams counters that despite an invitation by the judge to do so, CSX presented no evidence as to the tax rates to be applied, and thus CSX had no basis from which to insist on the charge.

Procedurally, CSX first moved for a directed verdict at the close of Williams' case, claiming his failure to address the tax rate on the past and future lost wages meant he had not proven damages. The court asked CSX to distinguish *Fanetti v. Hellenic Lines Ltd.*,[2] which holds that "to take advantage of the after-tax principle, a defendant must invoke it in timely and proper fashion" by offering "evidence to establish what amount of future taxes plaintiff would have incurred."[3] CSX conceded it had no authority contrary to *Fanetti*. The court denied the motion and invited CSX to present evidence of net income and tax rates if it wanted the jury to consider such.

CSX presented no such evidence. When CSX renewed its motion

---

[1] 444 U. S. 490 (100 SC 755, 62 LE2d 689) (1980).
[2] 678 F2d 424 (2nd Cir. 1982).
[3] Id. at 431-432.

at the end of the case, stating it had no further argument nor authority, the court predictably denied the motion. The court also declined to give the jury instructions proposed by CSX, which charged that in determining damages for lost wages, the jury should reduce those figures by any income taxes Williams would have paid on those wages. CSX did not request a jury charge that the overall award would not be subject to taxation.

(a) Federal law controls. "It has long been settled that questions concerning the measure of damages in an FELA action are federal in character . . . even if the action is brought in state court."[4]

(b) The United States Supreme Court held in *Liepelt:*[5] (i) a defendant may present evidence of tax rates on the lost income claimed by the FELA plaintiff, and (ii) "if requested, a trial court must instruct a jury its award is not subject to any income taxes and it should not consider such taxes in calculating an award."[6] Because CSX never requested a jury instruction that the overall award would not be subject to taxation, the court properly did not give one.

(c) CSX failed to present any evidence as to the amount or rate at which Williams' past and future lost wages would be taxed. It thereby waived any right to ask for a jury instruction that the jury should reduce the income portion of its award by the appropriate tax. Unlike the general charge that the award is not taxed and that the jury should not inflate its award to make up for any potential taxes, a charge directing the jury to reduce that portion of its verdict representing lost income so as to calculate an after-tax figure requires that the jury have facts as to what tax rate to apply. Instructing a jury not to do something does not require evidence, whereas instructing it affirmatively to calculate numbers requires that the jury have the tools to perform that calculation. It cannot simply guess, or fashion an arbitrary formula.

Williams contends the burden of providing those tools to the jury rests on defendant, whereas CSX argues a plaintiff bears this burden as part of its case in proving accurate damages. Although *Liepelt* did not address the issue of who has the responsibility of showing applicable tax rates, subsequent federal cases have done so and agree with Williams. These cases have often given the first instruction

---

[4] (Citation omitted.) *Liepelt,* supra, 444 U. S. at 493; see *CSX Transp. v. Snead,* 219 Ga. App. 491, 495 (4) (465 SE2d 690) (1995); *Seaboard System R. v. Taylor,* 176 Ga. App. 847, 849 (2) (338 SE2d 23) (1985).

[5] 444 U. S. at 493-498.

[6] *Fulton v. St. Louis-San Francisco R. Co.,* 675 F2d 1130, 1134 (10th Cir. 1982); see *Allred v. Maersk Line, Ltd.,* 35 F3d 139, 142 (4th Cir. 1994); *Lang v. Texas & Pacific R. Co.,* 624 F2d 1275, 1278-1279 (5th Cir. 1980); *Cazad v. Chesapeake & Ohio R. Co.,* 622 F2d 72, 75-76 (4th Cir. 1980); see generally *Consolidated Freightways Corp. &c. v. Futrell,* 201 Ga. App. 233, 236 (6) (410 SE2d 751) (1991).

(overall award not subject to taxes) without the defendant having presented any particular evidence, but have refused the second instruction (reduce lost income portion by taxes) where the defendant has failed to present evidence of taxes or net income.[7] *Deakle v. John E. Graham & Sons*[8] explained: "the income taxes that the uninjured [plaintiff] would have paid should be subtracted from each respective annual installment of his projected income. However, because the evidence introduced at trial did not establish how much in taxes an uninjured [plaintiff] would have paid, we cannot adjust [his] projected salary installments in this manner. The effect of this limitation is to increase [his] recovery since the entire . . . projected annual salary will be used as the basis for computing his lost future income. Having failed to perfect the record at trial, [defendant] cannot complain on appeal that an error has been made."[9]

CSX does not distinguish the federal cases placing the burden on defendant to show the applicable taxes before a charge that the lost income portion of the award should be reduced by taxes is appropriate. Its citation to *O'Byrne v. St. Louis Southwestern R. Co.*,[10] is inapposite, for *O'Byrne* addressed only the need to give the general charge that the overall award is not taxed and that the jury should not inflate its award to make up for any potential taxes. *O'Byrne* did not address the separate question of who bears the burden of showing applicable tax rates that would reduce the lost income portion of the award. The lack of the requisite evidence of applicable taxes warranted refusal of an instruction to award only after-tax income.

2. The other two enumerations of error concern the court's ruling that under *Seaboard Coastline R. Co. v. Delahunt*,[11] Williams could

---

[7] See *Fanetti*, supra, 678 F2d at 431-432; *Selby v. Lovecamp*, 690 FSupp. 733, 736 (N.D. Ind. 1988) (charge that overall award is not subject to taxation "is simple, clear and non-speculative"; charge that income portion is to be reduced by taxes requires evidence); *Akermanis v. Sea-Land Svc.*, 521 FSupp. 44, 58, fn. 6 (S.D.N.Y. 1981), rev'd on other grounds, 688 F2d 898 (2nd Cir. 1982); see generally *Burlington Northern v. Boxberger*, 529 F2d 284 (9th Cir. 1976) (distinguishes two types of jury instructions); *McWeeney v. New York &c. R. Co.*, 282 F2d 34, 38-40 (2nd Cir. 1960) (same).

[8] 756 F2d 821 (11th Cir. 1985).

[9] (Citations and footnotes omitted.) Id. at 830-831; see *Fanetti*, supra, 678 F2d at 432 (burden on FELA defendant to show taxes if award of lost income is to be reduced by taxes); *Bergen v. F/V St. Patrick*, 816 F2d 1345, 1351 (9th Cir. 1987) ("circuits have refused to consider this [tax] issue on appeal where the appellant did not seek to introduce evidence relating to taxation at trial"); *Akermanis*, supra, 521 FSupp. at 58, fn. 6 (there "was no evidence before the lay jury upon which to base a calculation" of taxes on the lost income, so charge on same was properly refused); see generally *Paquette v. Atlanska-Plovidba*, 701 F2d 746, 748-749 (8th Cir. 1983) (defendant failed to offer any testimony relating to income tax liability). Compare *Kurowsky v. United States*, 660 FSupp. 442, 453-454 (S.D.N.Y. 1986) (court reduced lost income award by tax amount where defendant provided evidence of the applicable tax rates).

[10] 632 F2d 1285 (5th Cir. 1980).

[11] 179 Ga. App. 647, 648 (1) (347 SE2d 627) (1986).

recover from CSX the $23,594.51 in medical expenses paid by GA-23000 with no offset. Because overwhelming federal authority holds amounts paid by this policy should be offset, the court erred in excluding evidence that GA-23000 paid the medical expenses and in disallowing the offset.

The statute at 45 USCA § 55 provides that a train company may offset against a plaintiff's FELA award "any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee. . . ." But medical bills paid by the employer as a fringe benefit are considered to come from a collateral source and may not be offset against the employee's recovery.[12]

In 1986 *Delahunt*[13] held that under federal law "[p]ayments made under group insurance contract GA 23000 fall under the collateral source doctrine, and the plaintiff can claim his medical expenses as a part of his damages." To reach this conclusion, *Delahunt* cited *Patterson v. Norfolk & Western R. Co.*,[14] *Clark v. Burlington Northern*,[15] *Haughton v. Blackships, Inc.*,[16] *Hall v. Minnesota Transfer R. Co.*,[17] and *Southern Pacific Transp. Co. v. Allen*,[18] each of which had held that GA-23000 or similar payments were not to be offset against the plaintiff's recovery.

These cases, however, either pre-dated or did not address a significant renegotiation of the collective bargaining agreement between CSX and the union. In 1973 the Second Circuit reaffirmed in *Blake v. Delaware & Hudson R. Co.*[19] that GA-23000 payments were from a collateral source and not to be offset against the plaintiff's recovery. In his concurrence, Judge Friendly wrote that to avoid this harsh result, the railroads could amend the collective bargaining agreement to provide for the offset.[20] Taking this as a cue, CSX and other railroads in 1975 renegotiated their collective bargaining agreement with the union to provide for that offset.

The collective bargaining agreement now provides: "In case of an injury or a sickness for which an Employee who is eligible for Employee benefits and may have a right of recovery against the employing railroad, benefits will be provided under the Policy Contract subject to the provisions hereinafter set forth. The parties

---

[12] See *Clark v. Burlington Northern*, 726 F2d 448 (8th Cir. 1984); *Patterson v. Norfolk & Western R. Co.*, 489 F2d 303 (6th Cir. 1973).

[13] 179 Ga. App. at 648.

[14] *Patterson*, 489 F2d at 303.

[15] *Clark*, 726 F2d at 448.

[16] 462 F2d 788 (5th Cir. 1972).

[17] 322 FSupp. 92 (D. Minn. 1971).

[18] 525 SW2d 300 (Tex. Civ. App. 1975).

[19] 484 F2d 204 (2nd Cir. 1973).

[20] Id. at 207; see *Thomas v. Humble Oil &c. Co.*, 420 F2d 793 (4th Cir. 1970); *Urbaniak v. Erie Lackawanna R. Co.*, 424 FSupp. 981 (W.D.N.Y. 1977).

hereto do not intend that benefits provided under the Policy Contract will duplicate, in whole or in part, any amount recovered from the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the Policy Contract, and they intend that benefits provided under the Policy Contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided. *Accordingly, benefits provided under the Policy Contract will be offset against any right of recovery the Employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the Policy Contract.*" (Emphasis in original.)

Since 1975, every federal court which has addressed the renegotiated collective bargaining agreement has held that payments under GA-23000 are not from a collateral source and are not fringe benefits and has offset those payments against the plaintiff's recovery.[21] *Folkestad v. Burlington Northern*[22] explains that the renegotiated collective bargaining agreement conclusively determines the issue, for the new agreement expressly stipulates GA-23000 payments are to be offset. Recent cases holding seaman's health payments for on-the-job injuries to be from a collateral source are inapplicable, for no language in the collective bargaining agreements in those cases expressly provides for offset.[23]

*Delahunt*[24] erroneously relied upon federal cases pre-dating or not addressing the 1975 collective bargaining agreement. Because federal authority is clear that under the agreement GA-23000 payments are to be offset, Division 1 of *Delahunt* is overruled. We note that the Montana Supreme Court in *Kalanick v. Burlington Northern*

---

[21] See *Varhol v. Nat. R. Passenger Corp.*, 909 F2d 1557, 1565 fn. 1 (7th Cir. 1990); *Folkestad v. Burlington Northern*, 813 F2d 1377 (9th Cir. 1987); *Muzzleman v. Nat. Rail Passenger Corp.*, 839 FSupp. 1094, 1096-1097 (D. Del. 1993); *Ford v. Nat. R. Passenger Corp.*, 734 FSupp. 215 (D. Md. 1990); *Lyons v. Southern Pacific Transp. Co.*, 684 FSupp. 909 (W.D. La. 1988); *Mead v. Nat. R. Passenger Corp.*, 676 FSupp. 92 (D. Md. 1987); *Kendig v. Consolidated Rail Corp.*, 671 FSupp. 1068 (D. Md. 1987); *Brice v. Nat. R. Passenger Corp.*, 664 FSupp. 220 (D. Md. 1987); *Francis v. Nat. R. Passenger Corp.*, 661 FSupp. 244 (D. Md. 1987); *Clark v. Nat. R. Passenger Corp.*, 654 FSupp. 376 (D. D.C. 1987); *Gonzalez v. Indiana Harbor Belt R. Co.*, 638 FSupp. 308 (N.D. Ind. 1986); *Nelson v. Penn Central R. Co.*, 415 FSupp. 225 (N.D. Ohio 1976); see also *Rogers v. Chicago & North Western Transp. Co.*, 375 NE2d 952 (Ill. App. 1978); see generally *Washington v. Atchison, Topeka &c. R. Co.*, 834 P2d 433 (N.M. App. 1992) (sickness benefits are not from collateral source); *Burlington Northern R. Co. v. Strong*, 907 F2d 707, 713-714 (7th Cir. 1990) (disability benefits were offset); *Clark v. Burlington Northern*, 726 F2d at 448 (disability payments were offset). Cf. *Lucht v. Chesapeake & Ohio R. Co.*, 489 FSupp. 189, 190 (W.D. Mich. 1980) (court allowed only premiums to be offset).

[22] 813 F2d at 1383.

[23] See *Davis v. Odeco, Inc.*, 18 F3d 1237, 1244-1245 (5th Cir. 1994); *Phillips v. Western Co. of North America*, 953 F2d 923, 929-933 (5th Cir. 1992).

[24] 179 Ga. App. at 647-648 (1).

*R. Co.*[25] similarly declined to follow prior Montana precedent on this issue in deference to recent federal law.[26]

The $350,000 verdict expressly included an award of $23,594.51 for medical expenses. It is undisputed that these medical expenses (excepting $138.05) were paid by GA-23000. The case is remanded to the trial court to reduce the judgment by $23,456.46, which will result in a new judgment of $326,543.54.

*Judgment affirmed on condition that plaintiff-appellee accept a reduction of the judgment amount; otherwise reversed. Andrews, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn, Smith, Ruffin and Eldridge, JJ., concur.*

DECIDED FEBRUARY 13, 1998.

*Casey, Gilson & Williams, James E. Gilson, Sandra Gray,* for appellant.

*Agnew, Schlam & Bennett, Paul R. Bennett, Billy E. Moore,* for appellee.

[25] 788 P2d 901, 908-909 (Mont. 1990).
[26] See also *Kendig,* supra, 671 FSupp. at 1068-1069 (overruling *Poole v. Baltimore & Ohio R. Co.,* 657 FSupp. 1 (D. Md. 1985)).