A92A1376. BOWLING et al. v. GOBER.
(424 SE2d 335)

BIRDSONG, Presiding Judge.

This is an interlocutory review of the state court's order denying the motion for summary judgment of appellant Hooters of Memorial Drive, Inc. (Hooters).

Appellee leased a car for his daughter's use. A truck driven by appellant/defendant Mark Alan Bowling crossed the highway centerline colliding with the leased car. Bowling had allegedly been drinking at Hooters. Thereafter, appellee filed suit against appellants for property damage to the vehicle. His amended complaint contains a prayer for recovery of compensatory damages for the full value of the automobile and for associated punitive damages, litigation expenses, and attorney fees.

Before filing the lawsuit, appellee received a settlement check from appellant Bowling's insurance company (Allstate) for $4,687.50 for the property damage to the leased vehicle. The check was payable jointly to Bowling and the vehicle lessor. Appellee attests that, although this payment was accepted from the insurance company, he executed no release of any claim against any party because of the collision, executed no covenant not to sue, and did not accept a settlement offer from either appellant Bowling or appellant Hooters. Appellee further attests he was not fully compensated for vehicle damages, as he had to pay an additional $230.70 out-of-pocket expense to the lessor in addition to endorsing the joint check for $4,687.50 to lessor. This evidence of record is uncontroverted.

The record reflects that the Allstate appraiser calculated his "initial valuation of the car" as $6,250, and after deducting the salvage value of $1,562.50, pursuant to appellee's request that he be allowed to keep the wreckage as evidence in a forthcoming lawsuit, tendered appellee the $4,687.50 check. A "Total Loss and Salvage Report," attached as an exhibit to the appraiser's affidavit, reflects that the initial appraisal amount was determined by taking an average retail fig-

ure of $6,025, deducting $250 as mileage factor, leaving a net of $5,775 to which $475 was added for vehicle accessories, thereby resulting in a valuation of $6,250. A $60 car condition deduction apparently was waived following negotiations with appellee. This same report reveals in paragraph 2 that the estimated salvage value of the vehicle is either $350 or $250; however, a "Diary Activity" entry on the same form reflects that appellee was informed that an amount equal to 25 percent of the appraised value of the vehicle (25 percent of $6,250) normally was received for salvage. Thus, appellant Bowling was offered and accepted the sum of $4,687.50. It is uncontroverted that the collision damage resulted in the car being declared a total loss; the vehicle was "totaled."

The trial court converted Hooters' motion to dismiss into a motion for summary judgment, and denied the motion. *Held*:

1. Examination of both the original and the amended complaint of appellee reveals a lack of compliance with the notice requirement of the CPA regarding any alleged tortious interference of contract (see generally OCGA §§ 9-2-3; 51-1-1; 51-1-6; 51-1-8; compare *Union Camp Corp. v. Southern Bulk Indus.*, 193 Ga. App. 90 (386 SE2d 866) with *City of Albany v. Oxford Constr. Co.*, 221 Ga. 872 (148 SE2d 324)) by destruction of appellee's right to exercise an option to purchase at the conclusion of the lease. At the time of the trial court's order denying summary judgment, subject complaint did not provide sufficient notice of such a tort within the meaning of *Bazemore v. Burnet*, 117 Ga. App. 849, 852 (161 SE2d 924). Accordingly, the trial court erred in basing, at least in part, the denial of summary judgment on any type of tortious interference with a contract right to exercise an option to purchase. Thus, we must determine whether genuine issues of material fact remained as to the claim of damage for tortious destruction of the car.

2. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843).

3. Appellants assert they have met their burden pursuant to *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474), thus requiring grant of summary judgment, because appellee obtained full satisfaction of his automobile damage claim from the insurance company. If full satisfaction has been obtained, the law will not allow double recovery. OCGA § 9-2-4; compare *Overstreet v. Ga. Farm &c. Ins. Co.*, 182 Ga. App. 415 (355 SE2d 744) (physical precedent only).

As a general rule "[r]ecovery for damages to an automobile *may* be based on the difference in the value before the injury and the value

afterwards; alternatively, it may be based on the reasonable value of necessary repairs together with hire value of the vehicle while incapable of use and the value of permanent impairment, provided the aggregate amount of those items does not exceed the value of the automobile before the accident, with interest." *Knight v. Stevens Logging,* 173 Ga. App. 359, 360 (1) (326 SE2d 494). Value for purposes of this rule means "fair market value." *Battle v. Strother,* 171 Ga. App. 418, 421 (5) (319 SE2d 887); *Southern Crate &c. Co. v. McDowell,* 163 Ga. App. 153, 155 (3) (293 SE2d 541); *Rutledge v. Glass,* 125 Ga. App. 549, 550 (2) (188 SE2d 261); Cobb & Eldridge, Ga. Law of Damages, Motor Vehicles, § 30-2, and cases cited at p. 524, n. 1. When a vehicle is destroyed to the extent that it cannot be repaired economically, the "fair market value" after the accident would be the salvage value, provided there exists evidence of physical damage to the vehicle sufficient to establish the vehicle was not so repairable. Cobb & Eldridge, supra at § 30-2, p. 523.

Pretermitting the question whether appellee could claim any necessary out-of-pocket lease expenses, which were separate and distinct expense items unrelated to any vehicle repair or replacement costs, but which would arise as a consequence of the collision causing a cessation to the rights and duties flowing from the automobile lease contract between appellant Bowling and the apparent true owner/lessor of the vehicle (compare OCGA § 51-12-7 as interpreted in *Denton v. Con-Way &c. Express,* 261 Ga. 41 (402 SE2d 269) with *Firestone &c. Co. v. Jackson Transp. Co.,* 126 Ga. App. 471 (191 SE2d 110) and *Lamb v. Landers,* 67 Ga. App. 588 (4) (21 SE2d 321)) is whether a genuine question of material fact exists regarding the alleged full settlement under the general rule as stated in *Knight,* supra.

Examination of the affidavit and Total Loss Salvage Report attached thereto, found in the supplemental record, reveals that a genuine issue of material fact exists for the jury's determination whether appellee has received full satisfaction of his claim so as to be precluded from recovery under the doctrine prohibiting double recovery. First, the insurance adjuster avers that the sum of $6,250 was his "initial valuation of the car." The salvage report reflects that the vehicle had an "average retail" of $6,025 from which was deducted a $250 mileage factor and added a $475 accessories factor, and that an apparent $60 deduction for car condition was not taken due to negotiation. Nowhere in the affidavit or the report is an express statement made that the resulting "initial valuation" was, in fact, the "market value" of the car before the collision. Any inferences from the evidence must be drawn in favor of appellee who is opposing the motion for summary judgment. *Moore,* supra. The reasonable inference to be drawn from this evidence is that the figure of $6,250 was not a final and reasonable "fair market value" calculation, but was only an "ini-

tial valuation" of the car based in part on insurance industry mileage factors and unexplained accessory allowances. Accordingly, we find a jury issue exists as to the fair market value of the car before the collision. Secondly, the front page of the salvage report lists the "estimated salvage value" of the vehicle as either "$350" or "$250," but in the "Diary Activity" section of the report it appears that salvage value was determined merely by informing appellee that the insurance company normally receives 25 percent on salvage. Thus, we find that the salvage value purportedly relied upon as the "fair market value" of the totaled vehicle after collision was based on the taking of an arbitrary 25 percent of the $6,250 "initial valuation" figure. Not only is this alleged salvage valuation questionable because the "initial valuation" figure itself is questionable, but also an unexplained contradiction exists (see *Gentile v. Miller &c., Inc.*, 257 Ga. 583 (361 SE2d 383)), between the $250 or $350 salvage figure on the front page of the report and the $1,562.50 salvage report figure shown on the second page of the report and claimed as the salvage value in the adjuster's affidavit. It was the $1,562.50 salvage value calculation that was treated by the insurance company as the salvage value of the vehicle after loss and deducted from the "initial valuation" figure of $6,250 resulting in the tender of the $4,686.50 check jointly to appellee and lessor. Appellants have never maintained that appellee executed a release adequate to preclude the maintenance of this suit. Rather, they consistently contended appellee had received full satisfaction. The evidence in the record before us is uncontroverted that appellee did not execute a release or any other binding document not to sue appellants merely by accepting and cashing in 1989 the check tendered by the insurance company, and that he did not accept the check as "full compensation" of his damages. " '[I]f there is no release, and the payment is not made and accepted as "full compensation" it is only a pro tanto payment, for if the cause of action has not been surrendered, only full compensation will extinguish it." *Gilmore v. Fulton-DeKalb Hosp. Auth.*, 132 Ga. App. 879, 880 (209 SE2d 676). Appellants have failed to meet their burden under *Lau's Corp.*, supra, and a genuine issue of material fact exists as to the issues of "fair market value" (both before and after the collision) and "full compensation." The correct ruling of a trial court will not be reversed regardless of the reason therefor. *National Consultants v. Burt*, 186 Ga. App. 27, 33 (2) (366 SE2d 344).

*Judgment affirmed in part and reversed in part. Beasley and Andrews, JJ., concur.*

DECIDED OCTOBER 29, 1992.

Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Sydney P. Wright, Long, Weinberg, Ansley & Wheeler, Ronald R. Coleman, Jr., for appellants.

Butler, Wooten, Overby & Cheeley, Robert D. Cheeley, Patrick A. Dawson, Neely & Player, Ronald D. Reemsnyder, Andrew C. Ausband, Cashin & Morton, John C. Porter, Jr., Dennis, Corry, Porter & Thornton, R. Clay Porter, Robert G. Ballard, for appellee.